IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

TAMMY CHRISTINE HANSON                                                      PLAINTIFF

v.                                        Case No. 3:10-CV-03022

BAXTER COUNTY, ARKANSAS; SHERIFF JOHN
MONTGOMERY, Individually and as Sheriff of Baxter
County, Arkansas; LIEUTENANT RANDALL WEAVER,
Individually and as Lieutenant and Jail Administrator of
Baxter County Detention Center; JOSEPH TULLIS, M.D.,
Individually and as medical provider of Baxter County
Detention Center and as Deputy Sheriff of Baxter County,
Arkansas; DEPUTY WILTON "CHIP" NORRIS,
Individually and as medical provider of Baxter County
Detention Center and as Deputy Sheriff of Baxter County,
Arkansas; HELEN FENWICK, Individually and as Baxter
County Detention Center Jailer; JAILER TONY BECK
a/k/a TONY BURCH; WILLIAM ALTRAZAN,
Individually and as Baxter County Detention Center Jailer;
GARNETT MCMAHON, Individually and as Baxter County
Detention Center Jailer                                                    DEFENDANTS

**ORDER**

Currently before the Court for consideration are the following motions and supporting

documents:

• A motion (Doc. 160) for reconsideration of the Court's October 10, 2013 order, or

in the alternative, supplemental motion for summary judgment filed by Defendant

Joe Mitchell Tullis, M.D. ("Dr. Tullis") and supporting documents (Docs. 161-162),

Plaintiff Tammy Hanson's response[1] (Doc. 165) and supporting documents (Docs.

_____

[1] In his reply, Dr. Tullis moves to strike Ms. Hanson's response as untimely. Ms. Hanson's
response was due on January 6, 2014, but was not filed until January 7, 2014. The Court does not
believe that the one-day delay prejudiced Dr. Tullis, and declines to strike Ms. Hanson's filing.
While represented parties have the ease and convenience of electronic, same-day filing, *pro se* parties

-1-

164, 166), Dr. Tullis's reply (Doc. 168) and brief in support (Doc. 169), and Ms.

Hanson's sur-reply (Doc. 171);

- Ms. Hanson's motion (Doc. 167) for an order directing the Arkansas Department of

  Corrections ("ADC") to permit Ms. Hanson access to potential witnesses who are

  currently incarcerated;

- Ms. Hanson's motion (Doc. 172) for a bench trial and Dr. Tullis's response in

  opposition (Doc. 174); and

- Ms. Hanson's motion (Doc. 173) to continue the scheduled trial and Dr. Tullis's

  response in opposition (Doc. 175).

The Court will address each motion in turn.

## I.     Motion for Reconsideration/Summary Judgment

Plaintiff Tammy Hanson originally filed this case on March 8, 2010.  As Ms. Hanson was

incarcerated at the time she filed her complaint and the action was brought pursuant to 42 U.S.C. §

1983, the matter was referred to Chief United States Magistrate Judge James R. Marschewski for

the preliminary stages of the litigation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.1(VIII)(B).

Over the next couple of years, the Magistrate ruled on various nondispositve motions and issued a

report and recommendation (Doc. 59) on motions for summary judgment filed by Defendants.  An

order (Doc. 61) adopting that report and recommendation was entered by the then-assigned district

court judge, the Honorable Jimm Larry Hendren.  An evidentiary hearing was scheduled and held

by the Magistrate to determine issues triable to a jury over two days in February of 2012 and one day

---

do not have access to file documents through the electronic filing system.  Some leeway should be
given to *pro se* parties when legitimate logistical issues arise due to the necessity of conventional
filing.  A one-day delay is not unreasonable in this instance.

in August of 2012.  A report and recommendation (Doc. 148) ("R&R") was issued after the evidentiary hearing, in which the Magistrate recommended that certain claims be dismissed and that others proceed to trial.  Ms. Hanson filed a motion for extension of time to file objections to the R&R and a motion for a transcript to be prepared of the evidentiary hearing.  (Doc. 149).  The Magistrate granted the motion for extension of time, but denied the motion for preparation of a transcript, as he did "not believe a transcript [was] necessary in order for Plaintiff to file her objections."  (Doc. 150).

Ms. Hanson timely filed her objections to the R&R.  No Defendant filed any objections to the R&R or responded to Ms. Hanson's objections.  On October 10, 2013, the Court entered an order declining to adopt the R&R and instead finding that all of Ms. Hanson's claims that had earlier survived summary judgment should proceed to adjudication via jury trial, which was set on the same day for March 17, 2014.  Nearly two months later, on December 4, 2013, Dr. Tullis filed the instant motion for reconsideration and alternative supplemental motion for summary judgment.  That motion has now been fully briefed and is ripe for the Court's consideration.

Dr. Tullis first argues that the Court committed procedural error by not conducting an appropriate *de novo* review of the record in ruling on Ms. Hanson's objections to the Magistrate's R&R. Because the Magistrate denied Ms. Hanson's motion for a transcript, and Defendants did not otherwise order a transcript, no transcript was available on the record for the Court's review at the time the Court filed its order adopting the R&R.  The Court made note of this fact in its order, stating "[t]he Court was . . . somewhat hampered in its review based on the fact that there are no transcripts readily available for the evidentiary hearings conducted by the Magistrate."  (Doc. 153). The Court went on to say that the lack of a transcript "did not preclude an adequate review, as any deficiencies

in the record were immaterial given the Court's findings." *Id.*

Dr. Tullis cites to several cases to support his argument that failure to review a transcript of an evidentiary hearing when conducting a *de novo* review constitutes error. All of the cases cited to by Dr. Tullis are, however, readily distinguishable in that—in those cases—the court ultimately dismissed (or was considering dismissal of) the plaintiffs' or petitioners' claims without review of the complete record before the magistrate. *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) (addressing district court's adoption of R&R granting judgment in favor of defendants over plaintiffs' objections); *Thompson v. Scurr*, 668 F.2d 999 (8th Cir. 1982) (addressing district court's rejection of R&R and denial of petitioner's writ of habeas corpus); *Spaulding v. University of Washington*, 676 F.2d 1232 (9th Cir. 1982) (interlocutory review of district court's denial of plaintiffs' motion for district court to prepare a transcript of evidentiary hearing before plaintiffs filed their objections to an R&R); *Wimmer v. Cook*, 774 F.2d 68 (4th Cir. 1985) (addressing district court's adoption of R&R dismissing plaintiff's case over plaintiff's objections). In contrast, in this case, the Court ruled in favor of Ms. Hanson in declining to adopt the R&R and preserving her claims for trial.

Courts that have mandated that a *de novo* review include review of the transcript of any hearings held by the magistrate have uniformly reasoned that the use of a magistrate cannot diminish any existing right of the parties to have their case determined by an Article III judge. That right has undoubtedly been upheld in this case. The Court's order declining to adopt the R&R was based on the fact that, after a review of the record available to the Court, it was clear that "some weighing of the evidence and credibility determinations necessarily occurred in arriving at the conclusion that certain of Ms. Hanson's claims should be subject to dismissal at this stage of the litigation." (Doc.

-4-

153, p. 3).  The Court found that this was especially true given that Ms. Hanson's claims had already survived a summary judgment motion.  The Court also kept in mind the respect due Ms. Hanson's jury demand, the Eighth Circuit's mandate to use caution when testing claims via an evidentiary hearing, and the high standard for dismissal at that stage of litigation.

The Court's ultimate findings ensured that no party's right to determination by an Article III judge was violated.  The Court cannot find that there is an obligation on a district court to review every part of a lengthy record in order to conduct an adequate *de novo* review in every instance. Because the parties' rights were otherwise upheld, and because the Court could base its findings on the portions of the record readily available, preparation of the transcript at that juncture was unnecessary and would have resulted in further delay of this matter, which had already been pending for almost three years.  It would also have been an exercise in tedium for the Court to review a lengthy transcript despite that fact that a decision could be made without such review.

Furthermore, the Court's order should be viewed through the lens of the Magistrates Act, pursuant to which this matter was referred to the Magistrate in the first instance.  Under the provisions of the Magistrates Act, 28 U.S.C. § 636, certain issues in civil matters may be referred to a magistrate judge without consent of the parties pursuant to subsection (b), and "any and all proceedings" may be referred to a magistrate judge upon consent of the parties pursuant to subsection (c).  While good cause must be shown for a district judge to vacate a referral to which the parties consented under subsection (c), "[s]ection 636(b) contains no limitation on a district court's power to resume control over a case that has previously been referred to a magistrate judge."  *Smith v. Rebstock*, 477 Fed. Appx. 884, 885 (3rd Cir. 2012) (unpublished).  Since referrals made pursuant to subsection (b) are made without the consent of the parties, a safeguard is inserted in references

made pursuant to subsection (b), "namely that the district judge alone acts as the ultimate decisionmaker." *In re Wickline*, 796 F.2d 1055, 1058 (8th Cir. 1986).  While a district court may not rely solely on a magistrate's report and recommendation in making a final determination of any issue in a case, it is certainly within the district court's purview to retain control of any issue that is not finally decided.  Therefore, a thorough *de novo* review is required when adopting or denying a report and recommendation and dismissing claims or entering judgment.  Such requirement, however, cannot impinge on an Article III judge's authority and obligation to retain final control over any dispositive matters as to which the parties have not consented to the magistrate's exercise of control.  In declining to adopt the R&R in this case, the Court was exercising its authority to retain final control over dispositive matters.

Finally, while Dr. Tullis seeks to invoke *de novo* review of the Court at this juncture, the fact remains that he neither objected to the R&R nor responded to Ms. Hanson's objections.  Therefore, while Ms. Hanson was entitled to *de novo* review before the Court dismissed any of her claims, Dr. Tullis was not.  Dr. Tullis did not respond to Ms. Hanson's objections to point to the parts of the record that he now cites as relevant to the Court's consideration.  Even had the Court ordered preparation of the transcript and gone through the exercise of reviewing it, such review would have been a largely unguided exploratory effort in which the Court would have had to essentially advocate for the Defendants in trying to find something to contradict Ms. Hanson's objections.  In filing the instant motion, Dr. Tullis is now doing what he should have done four months ago.  The instant motion for reconsideration is a belated attempt at responding to Ms. Hanson's objections, which has resulted in prolonged and unnecessary motion practice.  Presumably, in asking for reconsideration, Dr. Tullis is asking the Court to grant him relief from the order adopting the R&R pursuant to Rule

60 of the Federal Rules of Civil Procedure. The Court finds no grounds for granting Dr. Tullis relief from its previous order under that rule.

As to Dr. Tullis's alternative supplemental motion for summary judgment, the Court notes that notes that Dr. Tullis has already had not one, but two, failed attempts (the original summary judgment motion and the evidentiary hearing/R&R) to get the claims against him dismissed, and the Court does not wish to condone coming back to the Court for a third attempt. However, because both Dr. Tullis and Ms. Hanson have expended a great deal of time and effort in addressing the issues raised by the motion, and because the filings have helped to clarify certain of Ms. Hanson's claims, the Court finds that the interests of justice and efficiency weigh in favor of addressing Dr. Tullis's alternative motion on the merits.

Having reviewed the parties' arguments, and the portions of the now-prepared transcript cited to by the parties, the Court finds that, while Dr. Tullis cannot be dismissed completely as a Defendant to this case, Ms. Hanson's claims against him should be narrowed. Ms. Hanson appears to want to litigate claims against Dr. Tullis for everything from her alleged denial of fresh air and sunlight to her alleged denial of adequate toilet paper. It is clear from the record, however, that Dr. Tullis was not responsible for ensuring that Ms. Hanson received adequate fresh air, sunlight, toilet paper, or feminine hygiene products. Those are issues covered by Ms. Hanson's claims against the other Defendants. Likewise, the Court finds that Dr. Tullis was not responsible for regulation and provision of either food or medication at the jail. Therefore, Ms. Hanson has no claims against Dr. Tullis regarding her diet or adequate provision of medication. Dr. Tullis could not be physically present at the jail to look over the jailers' shoulders every time food or medicine was (or should have been) doled out. It is clear that, by both practice and policy, jail officials were ultimately responsible

for provision of both food and medication.  Because Ms. Hanson's claims regarding inadequate treatment of her thyroid conditions stem from her view that Dr. Tullis did not adequately monitor whether she was receiving her prescribed medication, and because the Court can discern no other meritorious basis for a claim based on treatment of her thyroid conditions, the Court finds that Ms. Hanson has no cognizable claims against Dr. Tullis based on his treatment of her thyroid conditions.

The Court narrows Ms. Hanson's claims against Dr. Tullis and finds that only the following issues may be presented as to Dr. Tullis at the trial of this matter: (1) Ms. Hanson's claim that Dr. Tullis was deliberately indifferent to her medical needs in allegedly allowing her to unnecessarily suffer pain stemming from her ovarian cysts and their rupture; and (2) Ms. Hanson's claim that Dr. Tullis was deliberately indifferent to her medical needs in allegedly not adequately treating her urological complaints.  The Court finds that there remain sufficient genuine issues of material fact regarding these allegations to preclude summary judgment in favor of Dr. Tullis at this time.  These issues include, but are not limited to, the following: what authority (apparent or actual) Dr. Tullis had to prevent Ms. Hanson from being taken to the emergency room when Ms. Hanson otherwise thought it was necessary; to what extent the jail actually relied on Dr. Tullis, regardless of the policies in place, to provide either emergency or non-emergency care and to what extent Dr. Tullis was aware of any such reliance; what actual recourse Ms. Hanson had to secure her own care without going through Dr. Tullis or securing his approval; and whether the care provided by Dr. Tullis was reasonable under the circumstances (and what the relevant circumstances were).

Because these issues remain, the Court finds that Dr. Tullis's supplemental motion for summary judgment should be denied.  Ms. Hanson is cautioned, however, that she will be limited in the presentation of her case against Dr. Tullis to the two discrete issues enumerated above.

-8-

## II.     Motion for Order Regarding Incarcerated Witnesses

Ms. Hanson moves the Court to issue an order directing the ADC to permit her access to requested incarcerated prospective witnesses in order to allow her to interview such witnesses in preparation for trial.  No response was filed.  Ms. Hanson states that many of her fact witnesses are currently incarcerated in the ADC and that she has been denied access to interview those witnesses either in person or via telephone.  In at least one instance, access was denied by the warden based on the fact that Ms. Hanson has previous misdemeanor convictions.

While the Court acknowledges that lack of access to these potential witnesses may cause difficulties to Ms. Hanson in attempting to prepare her case for trial, the Court declines to enter an order directing the ADC to allow her access.  The ADC must retain some discretion over the running of its own facilities.  While Ms. Hanson avers that she is not a security threat, the ADC has the discretion to refuse visitation based on criminal history or any number of other reasons.  Ms. Hanson can continue to seek recourse through the ADC system.

In the event Ms. Hanson remains unable to interview witnesses before trial, she should make a note as to which witnesses she was unable to speak with when listing her witnesses in her pre-trial disclosure sheet.  Defendants will be expected to disclose, within three days of Ms. Hanson filing her pre-trial disclosure sheet, whether they have spoken to any such witnesses in preparation for trial.  As needed, and giving due consideration to the interests of efficiency and justice, Ms. Hanson will be given some opportunity to speak with her witnesses prior to their testimony at trial.

Ms. Hanson's motion for order (Doc. 167) is DENIED.

## III.     Motion for Bench Trial

While Ms. Hanson originally made a jury trial demand, she now moves the Court to convert

the scheduled jury trial to a bench trial.  (Doc. 172).  Defendants, however, also made a jury demand (Doc. 18, ¶ 9), and at least one Defendant—Dr. Tullis—has responded in opposition to Ms. Hanson's request for a bench trial.  (Doc. 174).  Pursuant to Federal Rule of Civil Procedure 38(d), a proper jury demand may be withdrawn only with the parties' consent.  Because Dr. Tullis does not consent to withdraw his jury demand, Ms. Hanson's motion for a bench trial (Doc. 172) must be DENIED.  This case remains set for trial by jury.

## IV.    Motion to Continue

Ms. Hanson moves to continue the jury trial of this matter currently set for March 17, 2014.  (Doc. 173).  Dr. Tullis has filed a response (Doc. 175) opposing any continuance.  Ms. Hanson states that she has retained an expert in the field of jail operations who has a conflict with the current trial date and, in fact, the entire month of March.  This matter has been pending for almost four years, and this trial date was set in October of last year.  Absent some indication that the testimony is relevant, admissible, and vital to Ms. Hanson's case, the Court declines to continue this litigation further on the basis that a recently retained expert will not be available.

Ms. Hanson's motion to continue (Doc. 173) is DENIED, and the case remains set for jury trial to begin March 17, 2014.

## V.    Conclusion

For all the reasons set forth above, IT IS ORDERED that Dr. Tullis's motion for reconsideration and, in the alternative, for summary judgment (Doc. 160) is DENIED.

IT IS FURTHER ORDERED that Ms. Hanson's motion for order (Doc. 167) is DENIED.

IT IS FURTHER ORDERED that Ms. Hanson's motion to convert the scheduled jury trial to a bench trial (Doc. 172) is DENIED.

-10-

IT IS FURTHER ORDERED that Ms. Hanson's motion to continue (Doc. 173) is DENIED.

IT IS SO ORDERED this 7th day of February, 2014.

/s/ P. K. Holmes, III

P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE